KAREN PERKINS *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(14733)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and PALMER, Js.

Argued September 21—decision released December 21, 1993

*Regina M. Hopkins-Griggs,* commission counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant).

*William J. Dolan,* for the appellee (plaintiff).

PETERS, C. J. The principal issue in this appeal is the proper scope of the "invasion of personal privacy"

exception codified in General Statutes § 1-19 (b) (2)[1] of the Freedom of Information Act (FOIA).[2] The defendant freedom of information commission (FOIC), ordered the defendant John Gawrys, superintendent of the New Fairfield public schools, to disclose the sick leave records of the plaintiff school teacher, Karen Perkins, to the defendants Arthur E. Azzarito and the New Fairfield Taxpayers Association (association). The plaintiff appealed to the Superior Court, which reversed the decision of the FOIC on the ground that the FOIC lacked authority to require disclosure because the request in question was purely for information rather than one for specifically identifiable records. The FOIC[3] appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We disagree with the trial court's ruling and therefore reverse its order sustaining the plaintiff's appeal.

The material facts are undisputed. On June 17, 1991, Azzarito, the president of the association, made a written request to the holder of records of the New Fairfield board of education for information pertaining to sick leave records regarding the psychologist position held by the plaintiff at Consolidated School. The purpose of his request was to ascertain the number of sick days that she had accumulated, the amount of money

---

[1] General Statutes § 1-19 provides in pertinent part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. . . .

"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files *the disclosure of which would constitute an invasion of personal privacy* . . . ." (Emphasis added.)

[2] The Freedom of Information Act (FOIA) in its entirety is found in General Statutes §§ 1-15, 1-18a, 1-19 through 1-19c, 1-20a through 1-21a, and 1-21c through 1-21k.

[3] Although the defendants Azzarito, the association and Gawrys are appellants of record, the appeal has been prosecuted by the FOIC.

that had been paid to her to the date of his request, and the date on which she had last worked.

On June 17, 1991, pursuant to General Statutes § 1-20a (b),[4] Gawrys sent a letter to the plaintiff notifying her that the school district had received a request for the disclosure of her accumulated sick leave prior to the commencement of her sick leave for the current year, and that the district had denied the request on the grounds that disclosure would constitute an invasion of her privacy. The letter also informed the plaintiff that she had four business days from the receipt of the letter to notify the school district as to whether she had an objection to the disclosure of those records, and that the records would be disclosed absent such an objection.

The plaintiff filed a timely objection with Gawrys, who, in turn, sent a letter to Azzarito denying the records request. Thereafter, Azzarito and the association sent a letter to the FOIC urging it to require compliance with their request.

After an evidentiary hearing, the FOIC rendered its final decision ordering Gawrys to provide copies of the requested records to Azzarito and the association. The FOIC found that Azzarito had requested information limited to records concerning the plaintiff's sick pay rather than information about the nature of her illness or the state of her health. The FOIC determined that the plaintiff "has no reasonable expectation of confiden-

[4] General Statutes § 1-20a provides in pertinent part: "(b) Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned . . . . Nothing herein shall require an agency to withhold from disclosure the contents of personnel or medical files and similar files when it does not reasonably believe that such disclosure would legally constitute an invasion of personal privacy."

tiality regarding the characterization of her compensation and absence from work so long as the characterization [is congruent with] the terms of her contract . . . ." Stating that "a reasonable person would not suffer embarrassment as a result of the disclosure of information concerning sick time and compensation, because sick time is an ordinary benefit of employment that is generally used by employees in accordance with specific contract provisions," the FOIC decided that the "invasion of personal privacy" exception of § 1-19 (b) (2) did not apply because "the exemption was not intended to shield the misconduct of public officials from public knowledge." Id., 3. The FOIC concluded, therefore, that Gawrys and the plaintiff had not met their burden of proof with respect to the invasion of privacy exception.

The plaintiff filed a timely appeal to the Superior Court. After a hearing, the trial court sustained her appeal. Having first determined that the plaintiff was aggrieved by the FOIC decision requiring disclosure of her sick leave records, the court then, sua sponte, framed and resolved an issue concerning the nature of the request for disclosure made by Azzarito and the association. Relying on the definition of "public records or files" contained in General Statutes § 1-18a (d),[5] the court determined that Azzarito's request was one "for *answers* to questions and not a request for *access* to public records which might contain the answers to his questions. His request [sought] pure information and not specifically identifiable records." (Emphasis in original.) Explaining that this distinction was "not a formal or hypertechnical one," the court concluded that

---

[5] General Statutes § 1-18a (d) defines " '[p]ublic records or files' " as "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

Azzarito had failed to meet his burden of identifying the records that he sought to inspect. In the absence of a proper request, the court held that the FOIC had no way of knowing the type of documents or materials that were being sought and, thus, could not properly determine whether a FOIA violation had occurred or a FOIA exemption was applicable.

The FOIC has appealed from the trial court's judgment sustaining the plaintiff's appeal. The FOIC first maintains that the trial court mistakenly concluded that the form of the request made by the defendants, Azzarito and the association, deprived the FOIC of authority to find a FOIA violation. Second, the FOIC argues that the trial court should have found that, under General Statutes § 4-183 (j),[6] the administrative record contained substantial evidence to support the commission's order of disclosure and that its order is justified by an appropriately limited construction of the "invasion of personal privacy" exception found in § 1-19 (b) (2). We agree with both contentions.

## I

We must first resolve the issue of the nature of the request that Azzarito and the association made to

---

[6] General Statutes § 4-183 provides in pertinent part: "APPEAL TO SUPERIOR COURT. . . .

"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

Gawrys.[7] All of the parties to this case, including the FOIC,[8] treated the request as one for the plaintiff's sick leave records and, thus, within the province of the FOIA. The trial court nonetheless, sua sponte, characterized the request as one for "pure information," "*answers* to questions," and "not specifically identifiable [public] records," outside the scope of the FOIC's authority. (Emphasis in original.) We disagree with the trial court's characterization.

Our resolution of this issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency.[9] "[W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion." *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, "[t]he court's ulti-

---

[7] Azzarito's request stated the following: "I Arthur E. Azzarito am requesting the following information pertaining to the psychologist position held by [the plaintiff] at Consolidated School. This request according to persons at the F.O.I. Commission is not considered personal or medical. (1) Total number of sick days that were accumulated from her first day of employment up to her last day of performing her duties on 1/1/91. (2) Total number of sick days paid to her from the first day of her employment up to this date of request. (3) Total number of sick days remaining from this date of request. (4) Actual amount of monies paid to her up to the day of this request. (5) Last day she actually performed duties."

[8] In the FOIC's final decision, its repeated reference to the request made by Azzarito and the association as one for records must be taken to include an implicit ruling that the request was one for records within the jurisdiction of the FOIA. The plaintiff, in her complaint to the Superior Court, similarly characterized the request for her records. Gawrys, in all of his correspondence regarding this matter, also referred to the request as one for the plaintiff's sick leave records.

[9] The FOIC is an administrative agency; General Statutes § 1-21j; and is, thus, governed by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; including § 4-183 (j), which describes the Superior Court's standard of review of an agency decision. See footnote 6.

mate duty is only to decide whether, *in light of the evidence,* the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. (Emphasis added.) . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 774, 535 A.2d 1297 (1988). "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Citation omitted; internal quotation marks omitted.) *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission,* supra, 773–74; *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 342–43, 435 A.2d 353 (1980).

The FOIA states that "[e]xcept as otherwise provided by any federal law or state statute [including the exceptions to the FOIA], all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . ."[10] General Statutes § 1-19 (a). The act specifically defines " '[p]ublic records or files' " to include "any recorded data or information relating to the conduct of the pub-

---

[10] General Statutes § 1-15 provides in pertinent part: "(a) Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. . . ."

lic's business prepared, owned, used, received or retained by a public agency . . . ." General Statutes § 1-18a (d).

Azzarito and the association made a written request to Gawrys[11] pertaining to the plaintiff's sick leave records that was consistently treated, by all the parties, as a request for records. See footnote 8. Neither the plaintiff nor Gawrys ever asked for any clarification regarding the specific information that Azzarito and the association sought, and none of the parties to this case ever made any suggestion that the requested information was not part of the plaintiff's existing public record.

Although we have not previously had the occasion to articulate an interpretation of what constitutes a FOIA records request, this issue is similar to others in which courts must defer to the exercise of administrative judgment. "The FOIC has full authority to determine the existence of public records and the propriety of their disclosure." *Board of Education* v. *Freedom of Information Commission,* 208 Conn. 442, 454, 545 A.2d 1064 (1988). The FOIC properly, albeit implicitly, reached the conclusion that Azzarito and the association had submitted a request for records. The trial court's contrary conclusion relied on distinctions that are overly formal and legalistic in light of the public policy expressed by the FOIA. The overarching legislative policy of the FOIA is one that favors "the open conduct of government and free public access to government records." *Wilson* v. *Freedom of Information Commission,* supra, 328; *Chairman* v. *Freedom of Information Commission,* 217 Conn. 193, 196, 585 A.2d 96 (1991); *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984). As we

[11] The request was actually made to the Holder of Records, Business Office, Board of Education, New Fairfield, CT, as per the instructions of Gawrys.

have repeatedly noted, "[o]ur construction of the FOIA must be guided by the policy favoring disclosure . . . ." *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 626, 609 A.2d 998 (1992).

As a practical matter, the FOIA is used repeatedly by members of the public who are unschooled in technical, legalistic language distinctions. It would be unreasonable to deny a member of the public access to the FOIA simply because of arguable imperfections in the form in which a request for public records is couched. A talismanic insistence on the use of the word "record" would be inconsistent with the spirit and the policy of the FOIA. The trial court's contrary ruling cannot, therefore, be sustained.

## II

Although the request for the plaintiff's sick leave records was a request within the jurisdiction of the FOIC, the question remains whether the records were exempt from disclosure pursuant to the "invasion of personal privacy" exception contained in § 1-19 (b) (2). We conclude that, in the circumstances of this case, because the inquiry was limited to a request for numerical data, the FOIC correctly ordered disclosure.

## A

"[T]he general rule under the Freedom of Information Act is disclosure with the exceptions to this rule being narrowly construed. The burden of establishing the applicability of an exemption clearly rests upon the party claiming the exemption." *New Haven* v. *Freedom of Information Commission*, supra, 775; *Superintendent of Police* v. *Freedom of Information Commission*, supra; *Ottochian* v. *Freedom of Information Commission*, supra; *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 232, 602 A.2d 1019 (1992); *Hartford* v. *Freedom of Information Commission*, 201

Conn. 421, 431, 518 A.2d 49 (1986); *Maher* v. *Freedom of Information Commission*, supra; *Wilson* v. *Freedom of Information Commission*, supra, 329.

When the claim for exemption involves § 1-19 (b) (2), "[t]he plaintiffs must meet a twofold burden of proof . . . . First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or 'similar' files. Second, they must show that disclosure of the records 'would constitute an invasion of personal privacy.' " *Hartford* v. *Freedom of Information Commission*, supra, 431–32; *Superintendent of Police* v. *Freedom of Information Commission*, supra; *Ottochian* v. *Freedom of Information Commission*, supra, 399–400; *Chairman* v. *Freedom of Information Commission*, supra; *Board of Education* v. *Freedom of Information Commission*, 210 Conn. 590, 595, 556 A.2d 592 (1989). In this case, because the defendants have conceded, at oral argument, that the FOIA request sought the disclosure of personnel records, we need only determine whether their request "constitute[s] an invasion of personal privacy." General Statutes § 1-19 (b) (2).

The FOIA contains no definition of the phrase "invasion of personal privacy." Moreover, the parties have cited no relevant legislative history that sheds light on its meaning and we have found none. The legislature substituted the current phraseology in 1967; Public Acts 1967, No. 723, § 1; for a provision in the original FOIA, enacted in 1957, that denied access to a public record if "necessary to provide reasonable protection to the reputation or character of any person." Public Acts 1957, No. 428, § 2.[12] At the time of the statutory

---

[12] Section 2 of No. 428 of the 1957 Public Acts provides: "Notwithstanding the provisions of section 1 hereof the body, agency, commission or official who has custody or control of any such public record shall refuse permission to so inspect or copy such record or records if such inspection or copying would adversely affect the public security or the financial interests of

change, Representative Robert B. August stated, on the floor of the house, that its interpretation would be left to the courts. 7 H.R. Proc., Pt. 5, 1957 Sess., p. 2655.[13]

Although this court has had previous occasions to apply the statutory exemption for "invasion of personal privacy" in the circumstances of a particular case; see, e.g., *Chairman* v. *Freedom of Information Commission*, supra, 198; we have not undertaken to articulate a comprehensive definition of what this phrase means. We have, in effect, imposed a burden of proof on a claimant for an exemption without providing guidelines as to what such a claimant must show in order to obtain relief from the general rule that public records are subject to public disclosure. The time has come to fill this void.

In the absence of express statutory guidance on the meaning of the phrase, "invasion of personal privacy," the legislature has required us to inquire whether this phrase is a legal term of art that has "acquired a peculiar and appropriate meaning in the law" so to require it to be "construed and understood accordingly." General Statutes § 1-1 (a). This court has stated that "legal terms . . . absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense. . . . Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. . . . In ascertaining legislative intent

---

the state or any of its political subdivisions or if *such denial is necessary to provide reasonable protection to the reputation or character of any person.* Any such denial of such right of inspection shall be made to such resident, in writing, generally stating the reason therefor." (Emphasis added.)

[13] Representative Robert B. August specifically stated: "I believe the intent of the Committee was that if the record is kept that it shall be a public record unless the custodian feels that it would not provide reasonable protection to the character or reputation of any person. The courts will decide how far this situation may go." 7 H.R. Proc., Pt. 5, 1957 Sess., pp. 2654–55.

[r]ather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense. . . ." (Citations omitted; internal quotation marks omitted.) *Peck* v. *Jacquemin,* 196 Conn. 53, 70–71, 491 A.2d 1043 (1985); see also *Southington* v. *State Board of Labor Relations,* 210 Conn. 549, 561, 556 A.2d 166 (1989) (terms not defined in statutes should be given common or legal understanding); *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981); *Faulkner* v. *Solazzi,* 79 Conn. 541, 546, 65 A. 947 (1907). We therefore deem it appropriate to construe the phrase, "invasion of personal privacy," according to its common-law meaning.

As a common-law matter, the privacy concerns embedded in the "invasion of personal privacy" exemption from the FOIA mirror developing notions of protection for personal privacy that have emerged in a variety of legal contexts since the latter part of the nineteenth century.[14] Although the precise definition of a right to privacy varies with the particular context

---

[14] The notion of personal privacy first appeared as "the right to be let alone" by Judge Cooley in 1888; T. Cooley, Law of Torts (2d Ed. 1888) p. 29; and later appeared in the famous law review article by Samuel Warren and Louis Brandeis. S. Warren & L. Brandeis, "The Right to Privacy," 4 Harv. L. Rev. 193 (1890). Since that time, numerous commentaries have been written on the subject of a right to privacy. See, e.g., H. MacNeil, Without Consent: The Ethics of Disclosing Personal Information in Public Archives (1992); comment, "A Constitutional Right to Avoid Disclosure of Personal Matter: Perfecting Privacy Analysis in *J.P.* v. *DeSanti,* 635 F.2d 1080 (6th Cir. 1981)," 71 Geo. L.J. 219 (1982); A. Kronman, "The Privacy Exemption to the Freedom of Information Act," 9 J. Legal Stud. 727 (1980); F. McCarthy, "Privacy: Burgeoning Rights and Remedies," 38 Conn. B.J. 555 (1964); W. Prosser, "Privacy," 48 Cal. L. Rev. 383 (1960). For a concise treatment of the development of the right to privacy in tort law, see W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 117; W. Prosser, supra.

In terms of the common law, almost all states recognize the right to privacy in the context of the tort of invasion of privacy. W. Prosser & W. Keeton, supra; 3 Restatement (Second), Torts §§ 652A through 652E (1977); W. Prosser, supra.

in which the right has been recognized,[15] the statutory exemption finds its most persuasive common-law counterpart in the tort of invasion of privacy,[16] particularly in that aspect of the tort of invasion of privacy that provides a remedy for unreasonable publicity given to a person's private life. 3 Restatement (Second), Torts § 652D (1977). "[T]he context in which [this tort] has emerged and the considerations surrounding its

---

[15] See, e.g., *Whalen* v. *Roe,* 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977); *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147, reh. denied, 410 U.S. 959, 93 S. Ct. 1409, 35 L. Ed. 2d 694 (1973) (abortion); *Eisenstadt* v. *Baird,* 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) (contraception); *Griswold* v. *Connecticut,* 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965) (contraception); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 699–702, 710–11, 553 A.2d 596 (1989) (linking Connecticut case law with United States Supreme Court jurisprudence concerning the right to privacy in the context of a decision to terminate life support systems); *Doe* v. *Maher,* 40 Conn. Sup. 394, 418–32, 515 A.2d 134 (1986) (recognizing state constitutional right to privacy in context of state funding of abortions).

Numerous commentators have attempted to define the right to privacy. For example, Ruth Gavison has defined privacy as "our concern over our accessibility to others: the extent to which we are known to others, the extent to which others have physical access to us, and the extent to which we are the subject of others' attention." R. Gavison, "Privacy and the Limits of Law," 89 Yale L.J. 421, 423 (1980). Charles Fried has defined privacy as "the *control* we have over information about ourselves." (Emphasis in original.) C. Fried, "Privacy," 77 Yale L.J. 475, 482 (1968); see also W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 117. Black's Law Dictionary defines "invasion of privacy" as "[t]he unwarranted appropriation or exploitation of one's personality, publicizing one's private affairs with which public has no legitimate concern, or wrongful intrusion into one's private activities, in such a manner as to cause mental suffering, shame or humiliation to person of ordinary sensibilities. *Shorter* v. *Retail Credit Co., D.C.S.C.,* 251 F.Supp. 329, 330 [D.S.C. 1966]. Violation of right which one has to be left alone and unnoticed if he so chooses. Such invasion by an individual or the government may constitute an actionable tort; though public figures have less protection than private persons." Black's Law Dictionary (6th Ed. 1990). This definition clearly implicates the tort of invasion of privacy stated in the Restatement. 3 Restatement (Second), Torts § 652A (2) (1977).

[16] See, e.g., W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 117; W. Prosser, "Privacy," 48 Cal. L. Rev. 383 (1960).

The American Law Institute has stated that the tort of invasion of privacy actually comprises "four distinct wrongs, whose only relation to one another

development are uniquely analogous to the values and interests [that the state FOIA exemption] appears designed to protect." *Hearst Corp.* v. *Hoppe,* 90 Wash. 2d 123, 136, 580 P.2d 246 (1978).

Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosure of any matter that "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." By its terms, therefore, the tort action provides a private remedy to implement a public policy that closely approximates the public policy embodied in § 1-19 (b) (2) of the FOIA.

The commentary accompanying § 652D underscores the close relationship between the tort action and the statutory exemption. Comment (b) of § 652D describes the types of personal and private information that are given protection under the law of torts: "Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends.

is that each involves interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from prying eyes, ears and publications of others." 3 Restatement (Second), Torts § 652A, comment (b) (1977). "The right of privacy is invaded by:

"(a) unreasonable intrusion upon the seclusion of another . . . or

"(b) appropriation of the other's name or likeness . . . or

"(c) unreasonable publicity given to the other's private life . . . or

"(d) publicity that unreasonably places the other in a false light before the public . . . ." Id., § 652A (2).

Connecticut has recognized the tort of invasion of privacy. *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 468 A.2d 933 (1983); *Goodrich* v. *Waterbury Republican-American, Inc.,* 188 Conn. 107, 448 A.2d 1317 (1982); see also D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 166. The tort of invasion of privacy was first recognized in Connecticut in 1959. *Korn* v. *Rennison,* 21 Conn. Sup. 400, 156 A.2d 476 (1959). This recognition occurred two years after the FOIA was first enacted and before the 1967 amendments which included the current "invasion of privacy" phraseology. See id.

Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest." 3 Restatement (Second), Torts § 652D, comment b (1977).

Comment (c) of § 652D recognizes, however, that not all personal and private information is protected from public disclosure: "The rule stated in [§ 652D] gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable [person]. The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens. Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. . . . Even minor and moderate annoyance . . . is not sufficient to give him a cause of action under the rule stated in this Section. It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises." Finally, the Restatement recognizes that there is no invasion of a right to privacy when the subject matter of the publicity is of legitimate public concern. 3 Restatement (Second), Torts § 652D, comment (d) (1977).

The analogy between the tort action for "publicity given to private life" and the statutory exemption for invasion of personal privacy under § 1-19 (b) (2) of the FOIA is close and compelling. We have recognized that

a reasonable expectation of privacy must be viewed from the vantage point of an objective, ordinary reasonable person when we have held that a "person's reasonable expectation of privacy . . . [is a] significant factor . . . in determining if disclosure [of public records] would constitute an invasion of privacy." (Internal quotation marks omitted.) *West Hartford* v. *Freedom of Information Commission,* 218 Conn. 256, 263, 588 A.2d 1368 (1991); *Chairman* v. *Freedom of Information Commission,* supra, 198. Therefore, the tort standard would only supply a remedy for, and § 1-19 (b) (2) of the FOIA would only bar disclosure of, information that is highly offensive to the ordinary reasonable person. The legislature has, furthermore, determined that disclosures relating to the employees of public agencies are presumptively legitimate matters of public concern. That presumption is not, however, conclusive. In *Chairman* v. *Freedom of Information Commission,* supra, we held that the disclosure of internal, departmental, personnel evaluations would constitute an invasion of privacy in part because the evaluations were conducted under appropriate confidential circumstances with the employees, thereby making such reports matters that do not legitimately concern the public. See id., 205 (*Borden, J.,* concurring) ("[d]isclosing [personnel evaluations] would severely undermine the policy of full and frank exchange of information underlying the need for such reports"). On the other hand, the fact that a personnel file includes information about the acceptance of a bribe by a public employee or a medical file includes information about the incapacity of a high ranking public official to perform his or her duties because of an illness that would be considered highly offensive to a reasonable person would not preclude its disclosure if such information were determined to be of legitimate public concern.

Informed by the tort standard, the invasion of personal privacy exception of § 1-19 (b) (2) precludes disclosure, therefore, only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person. Enunciation of this standard does not signal a return to the invocation of a balancing test, which we explicitly rejected in *Chairman* v. *Freedom of Information Commission,* supra, 200–201. We conclude, as have courts in other jurisdictions, that an objective standard derived from the law of torts affords useful insight into the meaning of the phrase "invasion of personal privacy." See, e.g., *Harris* v. *Cox Enterprises, Inc.,* 256 Ga. 299, 348 S.E.2d 448 (1986) (applying common-law tort standard with language similar to the Restatement standard); *Webb* v. *Shreveport,* 371 So. 2d 316 (La. App.), cert. denied, 374 So. 2d 657 (La. 1979) (applying common-law tort standard); *State Employees Assn.* v. *Dept. of Management & Budget,* 428 Mich. 104, 404 N.W.2d 606 (1987) (applying common-law standard); *Jordan* v. *Motor Vehicles Division,* 308 Or. 433, 781 P.2d 1203 (1989) (applying common-law standard); *Industrial Foundation* v. *Texas Industrial Accident Board,* 540 S.W.2d 668 (Tex. 1976), cert. denied, 430 U.S. 931, 97 S. Ct. 1550, 51 L. Ed. 2d 774 (1977) (applying common-law tort standard with language similar to the Restatement standard); *Child Protection Group* v. *Cline,* 177 W. Va. 29, 350 S.E.2d 541 (1986) (applying common-law tort standard with language similar to the Restatement standard); *Hearst Corp.* v. *Hoppe,* supra (applying Restatement standard). Instead, we are judging an invasion of personal privacy in terms of the objective common law concept of the "reasonable person."

## B

Having articulated the standard and burden of proof that a party must meet in order to claim an "invasion

of personal privacy" exemption, we must now determine whether the plaintiff has met her burden in this case. We conclude that the FOIC correctly determined that she had failed to do so.

The plaintiff, relying on the authority of *New London* v. *Freedom of Information Commission,* Superior Court, judicial district of New London at New London, Docket No. 28067 (October 25, 1978), claims that any disclosure of a named employee's sick leave records constitutes a per se invasion of privacy. She argues that disclosure of her sick leave records would allow the recipient to compare them with the number of sick leave days allowed by her contract, enabling the recipient to know whether the plaintiff is "sickly" or "healthy." Such knowledge, she contends, could lead to a public discussion of her health and, thus, result in her embarrassment and an invasion of her personal privacy.

"[U]nsupported conclusory allegations of counsel are not evidence and are insufficient for the application of an exemption from disclosure." *New Haven* v. *Freedom of Information Commission,* supra, 776. "The burden of establishing the applicability of an exemption . . . requires the claimant . . . to provide more than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." (Citations omitted.) Id., 775–76; *Superintendent of Police* v. *Freedom of Information Commission,* supra, 627; *Hartford* v. *Freedom of Information Commission,* supra, 434–35.

We disagree with the plaintiff that a request for the numerical data dealing with a public employee's sick leave records constitutes a per se invasion of personal privacy. The plaintiff's proof consisted of little more than conclusory language and resort to unsubstantiated hypotheticals. Because of the lack of evidence in the

record from which the FOIC could reasonably have found support under either the new standard articulated herein or the prior standard for her conclusions and hypotheticals, the plaintiff cannot possibly prove that disclosure of the numerical data in her sick leave records would be highly offensive to a reasonable person. Thus, it does not have to be determined if the disclosure of such records is of legitimate concern to the public. The plaintiff has not met her burden under the statute and, therefore, she may not prevent disclosure of the requested records by virtue of the exemption contained in § 1-19 (b) (2).

Finally, we note that when a person accepts public employment, he or she becomes a servant of and accountable to the public. As a result, that person's reasonable expectation of privacy is diminished, especially in regard to the dates and times required to perform public duties. The public has a right to know not only who their public employees are, but also when their public employees are and are not performing their duties. We conclude that a records request under the FOIA for disclosure of the numerical data concerning an employee's attendance records, including or limited to sick leave, does not constitute an invasion of personal privacy within the meaning of § 1-19 (b) (2). Disclosure in this instance is required.[17]

---

[17] A number of other jurisdictions have reached the same conclusion under their FOIAs regarding attendance, employment or sick leave records. See, e.g., *Jafari* v. *Dept. of Navy,* 728 F.2d 247 (4th Cir. 1984) (authorizing disclosure of military reservist's attendance records under federal FOIA); *Brogan* v. *School Committee of Westport,* 401 Mass. 306, 516 N.E.2d 159 (1987) (authorizing disclosure of attendance and absentee records of school employees); *Capital Newspapers* v. *Burns,* 67 N.Y.2d 562, 496 N.E.2d 665, 505 N.Y.S.2d 576 (1986) (authorizing disclosure of police officer's absentee records); *Buffalo News* v. *Housing Authority,* 163 App. Div. 2d 830, 558 N.Y.S.2d 364 (1990) (requiring disclosure of public housing authority employee payroll, attendance and disciplinary records).

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion CALLAHAN, NORCOTT and PALMER, Js., concurred.

BORDEN J., concurring. I agree with part I of the majority opinion, and with the result reached in part II. I disagree, however, with the analysis in part II. With respect to part II, namely, the application of the statutory phrase, "invasion of personal privacy," to the facts of this case, I reach the same result as does the majority, but by a different route.

The majority opinion essentially rests on four related arguments. First, because neither the statute nor our cases have articulated a comprehensive definition of the phrase, "invasion of personal privacy," as it is used in General Statutes § 1-19 (b) (2), guidelines are needed to fill that gap so that claimants of the statutory exemption may know what they must show. Second, the majority suggests that the legislature, by using the phrase "invasion of personal privacy," intended the courts to construe that phrase according to its common-law meaning, by virtue of General Statutes § 1-1 (a).[1] Third, the most persuasive common-law counterpart to the statutory phrase is the tort of invasion of privacy, particularly that strand of the tort defined by § 652D of the Restatement (Second) of Torts (1977). Fourth, the Restatement definition of the tort of invasion of privacy is public disclosure of any matter that "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Thus,

---

[1] General Statutes § 1-1 provides in pertinent part: "WORDS AND PHRASES. (a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

according to the majority, those two elements define the meaning of "invasion of privacy" as used in § 1-19 (b) (2).

I agree with the majority to the extent that its first argument rests on the notion that some further judicial definition of the statutory phrase is needed. I disagree, however, that it is now necessary to arrive at a "comprehensive definition" that will "fill the gap" purportedly encountered by claimants who wish to avail themselves of the privacy exemption in § 1-19 (b) (2). For the reasons stated below, I prefer to continue to carve out the meaning of the phrase on a case-by-case basis, as opposed to adopting a definition that is, in my view, not well adapted to the interests implicated in the Freedom of Information Act (FOIA). I also believe that such a gradual adjudicative process was what the legislature intended when it enacted the phrase in 1967.

I disagree with the suggestion of the majority that the legislature intended the phrase, "invasion of personal privacy," as used in § 1-19 (b) (2), to have the same meaning as § 652D of the Restatement. That phrase is not, as the majority suggests, a legal term of art that has acquired a peculiar and appropriate meaning in the law, within the contemplation of § 1-1 (a). The phraseology used by the Restatement is not "invasion of personal privacy" but "one who invades *the right of privacy of another*." 3 Restatement (Second), Torts § 652A (1977). Similarly, the phraseology used by our cases is "an invasion of privacy action." *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 591, 468 A.2d 933 (1983). While this may appear to be semantic quibbling, I suggest that semantic differences, albeit slight, do or should affect the determination of whether the legislature has, by using particular language, intended the language as a term of art that incorporates another body of law.

This is particularly apt here where, contrary to the majority assertion that there is no relevant legislative history, the legislative history suggests to the contrary. The quotation from Representative Robert B. August regarding the meaning of "invasion of personal privacy"[2] is like Sherlock Holmes' inference from the silence of a dog that usually howled: it is relevant for what it does not say.[3] If the legislature had intended to incorporate, by virtue of the operation of § 1-1 (a), the common-law tort of invasion of privacy, as ultimately reflected in § 652D of the Restatement,[4] I would have thought that, when addressing the particular issue, someone would have said so, rather than saying something quite different. Instead, Representative August's statement is more plausibly understood as an invitation to the courts to develop our own interpretive gloss on the statutory phrase based, not on the common law of torts, but on the language and purposes of the FOIA.[5]

---

[2] When the phrase was first introduced, Representative Robert B. August stated: "I believe the intent of the Committee was that if the record is kept that it shall be a public record unless the custodian feels that it would not provide reasonable protection to the character or reputation of any person. *The courts will decide how far this situation may go.*" (Emphasis added.) 7 H.R. Proc., Pt. 5, 1957 Sess., pp. 2654–55. See majority opinion, footnote 13.

[3] A. Doyle, Silver Blaze (1892). In this story, Sherlock Holmes solved the mystery by reasoning backwards from the fact that a dog, which usually barked, had been silent.

[4] I recognize, as does the majority, that § 652D of the Restatement (Second) of Torts was not formulated until 1977, ten years after the enactment of the statutory phrase at issue in this case. I also recognize that the majority's argument is not that the legislature intended in 1967 to adopt a standard that was not formulated until 1977, but that the legislature intended the phrase to be read in its common-law meaning, and that the most persuasive common-law counterpart to the statutory phrase is the tort of invasion of privacy, which is generally understood to be defined by § 652D.

[5] Indeed, if the legislature had intended in 1967 simply to incorporate the common-law tort of invasion of privacy because the legislative phrase had acquired a peculiar and appropriate legal meaning, it is curious that,

Moreover, my conclusion that "invasion of personal privacy" is not a term of art within the meaning of § 1-1 (a) so as to invoke § 652D of the Restatement is buttressed by the fact that, as the majority recognizes, invasion of privacy has many different meanings in the law, all of which depend on the particular context and on the particular interests that are at stake. See majority opinion, footnote 15. Thus, contrary to the majority's argument, "invasion of personal privacy" is *not* a phrase that has "acquired *a* peculiar and appropriate meaning in the law" so as to require it to be "construed and understood accordingly." (Emphasis added.) General Statutes § 1-1 (a). Instead, it is a phrase that has acquired *a number* of meanings in the law, and absent some indication that the legislature intended it to have a particular one of those meanings, we cannot say that it was intended to have a particular "peculiar and appropriate meaning."[6]

This brings me to another fundamental difference with the analysis employed by the majority. Section 652D of the Restatement addresses the question of the circumstances under which a tort action for invasion of the right to privacy exists. Like all tort law, it is concerned with who shall bear the loss—whether the defendant should be required to compensate the plaintiff for harm caused by the disclosure of certain private facts. It addresses the question of whether, *the disclosure already having been made,* the courts ought

until the majority's argument in this case, no one, including the freedom of information commission, which has been charged with enforcing the FOIA, has even suggested such an interpretation for the twenty-six years that the phrase has been employed under the FOIA.

[6] Indeed, the Restatement itself, as the majority recognizes, identifies four different types of "invasion of the right of privacy of another," none of which has much if anything to do with the other three. I do not agree that we can legitimately say that the legislature intended one of those four to define the contours of the legislative language simply because that one seems to deal with issues similar to the legislative language, albeit in a very different context and for very different purposes.

to require money to change hands. Thus, it is concerned mainly with loss shifting interests, principally between private, not governmental, parties.[7] This set of interests simply does not fit the quite different inquiry, required by § 1-19 (b) (2), of whether presumptive disclosure by the government is prohibited.

Furthermore, the standard in § 652D of the Restatement that the information "is not of legitimate concern to the public," adopted by the majority as part of the meaning of "invasion of personal privacy," necessarily returns us to the balancing test that we explicitly rejected in *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 585 A.2d 96 (1991), the disclaimer of the majority to the contrary notwithstanding. The language of the Restatement is derived from, and the commentary specifically invokes, *Cox Broadcasting Corp.* v. *Cohen*, 420 U.S. 469, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975). See 3 Restatement (Second), Torts § 652D, comment (d) (1977). In explaining that concept in *Cox Broadcasting Corp.*, the United States Supreme Court indicated, implicitly at least, that a balancing test was involved. "If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information. *Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish.*" (Emphasis added.) *Cox Broadcasting Corp.* v. *Cohen,* supra, 496.

---

[7] Indeed, under the FOIA it is the government that discloses, and, insofar as I know, there is no waiver of sovereign immunity for harm caused by such a disclosure. It is therefore anomalous to employ a standard of tort law that would not even apply to the party who makes the disclosure. In effect, the majority has substituted the administrative appeal process (assuming that the person whose privacy has purportedly been invaded appeals a freedom of information commission determination of disclosure) for what would otherwise have been a tort remedy against the disclosing agency for its past disclosure. That may be a rational public policy, but I cannot find it expressed anywhere in the FOIA.

Once we embark, in the FOIA context, on determining whether the information sought is of "legitimate concern to the public," it will be very difficult to avoid balancing the public's need to know with the individual's assertion of privacy. Notions of legitimacy are necessarily contextual and fact driven, and will end up in balancing, either explicitly, or implicitly without acknowledgment. Indeed, even the fourth amendment concept of a criminal defendant's "legitimate expectation of privacy" sometimes involves a balancing test. See *State* v. *Mooney,* 218 Conn. 85, 96, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991), citing *Hudson* v. *Palmer,* 468 U.S. 517, 527, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (no legitimate expectation of privacy in prison cell because society's interest in security of penal institutions outweighs prisoner's interest in privacy within cell).

Moreover, even if we are somehow able to avoid a balancing test, the majority, by emphasizing that offensiveness and legitimacy are two separate prongs, both of which must be established independently, has nonetheless engrafted a new concept onto the language of § 1-19 (b) (2). That section provides only that certain records are exempt from disclosure if disclosure would constitute an invasion of personal privacy. It does not provide that the invasion must be accompanied by a lack of legitimate public need for disclosure.

This conclusion is reinforced by § 1-19 (b) (1),[8] which explicitly mentions the public's interest in disclosure. The absence of any such language in subdivision (2) indicates that the legislature did not intend the public inter-

---

[8] General Statutes § 1-19 provides in pertinent part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. . . .

"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of (1) preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure . . . ."

est to be a factor under subdivision (2). See *Chairman* v. *Freedom of Information Commission,* supra, 200, in which we adopted the same reasoning in eschewing a balancing test in subdivision (2).

I recognize that it is convenient to adopt the Restatement formulation of the tort of invasion of privacy, because it gives us an entire body of law and analytical framework, rather than having to struggle with the concept of invasion of personal privacy on a case-by-case basis, as we have been doing. I suggest, however, that that body of law and framework are simply not what the legislature meant, and were not designed to govern issues of disclosure under the FOIA. Indeed, that body of law may well give us more than we want, because in future cases we will inevitably be confronted with precedents under § 652D of the Restatement that will be pressed upon us, with considerable persuasive force, but that may well prove unsuited to the interests protected by the FOIA.

What, then, would I substitute for the test adopted by the majority in this case? Although I agree with the majority that further guidance on the meaning of the statutory language is in order, I disagree that a comprehensive definition is now needed in order "to fill this gap." I see no evidence, either in this record or in our cases under the FOIA generally, to suggest that the case-by-case adjudication method of defining the statutory meaning of "invasion of privacy" has hindered such claimants from securing their rights under the exemption, where warranted. Since we abandoned the balancing test in 1991; see *Chairman* v. *Freedom of Information Commission,* supra; this is only the second case that has called upon us to evaluate a claim that disclosure of material would constitute an "invasion of [the] personal privacy" of the claimant. See *West Hartford* v. *Freedom of Information Commission,* 218 Conn. 256, 588 A.2d 1368 (1991) (although ordinarily

an address is not a private fact, municipal retirees should be afforded opportunity to show that, by virtue of their significant efforts, they have a reasonable expectation of privacy in their addresses). It may be, as the majority suggests, that the absence of a comprehensive definition makes it more difficult for such claimants than would otherwise be the case, but that is simply the inevitable result of being required by the legislature to meet a standard that necessarily is broadly phrased and that requires a case-by-case treatment—at least until there are sufficient cases decided that suggest, by their facts and reasoning, more definite contours.

I would conclude, instead, that the statutory language does not warrant anything more than the adoption of a general objective standard of reasonableness under all of the circumstances, in the determination of whether disclosure would constitute such an invasion. I would continue to fill the gap by referring to what we said in *Chairman* v. *Freedom of Information Commission,* supra, with further refinements required by the facts and claims in this case. In *Chairman,* we outlined several "significant factors in determining if disclosure would constitute an invasion of privacy." Id., 198. These were: (1) whether the claimant had a "reasonable expectation of privacy" in the material sought to be disclosed; id.; (2) the "potential for embarrassment"; id.; (3) "whether the individual [whose privacy is at stake] originally gave the information to the government agency with the reasonable expectation that the material would be considered private"; id.; (4) the interest of government officials "in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives"; id., 199; and (5) whether disclosure would severely undermine a strong public policy,

such as "the need for full and frank exchange of information relating to the evaluation of public employees." Id., 204 (*Borden, J.,* concurring).

The plaintiff's claims in this case warrant further explication of the first factor noted above, namely, whether the claimant had a *reasonable* expectation of privacy in the material. As with any elaboration of reasonableness, the standard must be applied in light of all of the circumstances of the case. In this respect, I agree with the majority that the language of comment (b) to § 652D of the Restatement is useful for that further explication—not, however, because § 652D is suggested by § 1-19 (b) (2), but because that language is simply a very good description of what a reasonable expectation of privacy is and is not in this day and age.

I would, therefore, add to the factors listed above the following additional guide to the application of the general standard of reasonableness: The protection afforded by the statutory language, "invasion of personal privacy," must be gauged in relation to the customs of the time and place, to the occupation of the claimant, including the fact that he may be a public employee rather than a private citizen,[9] and to the habits of his neighbors and fellow citizens. See 3 Restatement (Second), Torts § 652D, comment (c) (1977). As the commentary to the Restatement states, "[c]omplete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part." Id. Even moderate annoyance is not sufficient to justify the statutory privacy exemption. Only when the disclosure would be such that a reasonable person would

---

[9] I note here that it is possible that some information sought to be shielded from disclosure pursuant to General Statutes § 1-19 (b) (2) may relate, not to the public employee whose personnel or medical files contains the information, but to a third party mentioned therein.

be justified in feeling seriously aggrieved by it does the statutory exemption apply. See id.

Applying these factors, I have no difficulty concluding that, under the facts of this case, the plaintiff has not established her entitlement to the exemption. The specific information sought in this case was the number of sick days that the plaintiff had accumulated, the amount of money paid to her up to the date of the request, and the date on which she had last worked. Without belaboring the point, I would conclude that none of the factors listed above would justify the application of the statutory exemption to this information. Thus, I agree with the majority's conclusion that disclosure in this instance is required.