[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED FEBRUARY 27, 1997
In this appeal the Department of Children and Families (hereinafter "DCF") seeks to overturn an order of the Freedom of Information Commission (hereinafter "FOIC") directing the disclosure of the names of five DCF employees disciplined in connection with the death of Emily H.[1] (In view of the confidentiality requirements of General Statutes § 17a-28 (b) for DCF child protection records, the child's last name will not be used.)
In addition to DCF and FOIC, Valerie Finholm (a reporter for CT Page 694-ZThe Hartford Courant), The Hartford Courant newspaper and the Union (AFSCME Council 4, Local 2663), which represents four of the five employees, participated in this appeal.
There is no dispute that pursuant to the General Statutes § 17a-28 (b) DCF records relating to child protection activities are confidential. DCF has released the nature of the discipline imposed on its employees, but not the employee names. The legal issue raised by the appeal is whether the names are exempt from disclosure pursuant to the personal privacy exemption of General Statutes § 1-19 (b)(2). Section 1-19 (b)(2) provides in pertinent part:
 Nothing in sections 1-15, 1-18a, 1-19[2] to 1-19b, inclusive, and 1-21 to 1-21k, inclusive shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . .
In applying the Freedom of Information Act (§ 1-7, et seq.) we understand that "The Freedom of Information Act expresses a strong public policy in favor of the open conduct of government and free public access to government records." Wilsonv. FOIC, 181 Conn. 324, 328-29 (1980). "The general rule under CT Page 694-AA the Freedom of Information Act is disclosure with exceptions to the rule being narrowly construed." New Haven v. FOIC,205 Conn. 767, 774 (1988): Superintendent v. FOIC, 222 Conn. 621, 626
(1992); Rose v. FOIC, 221 Conn. 217, 232 (1992); and Perkins v.FOIC, 228 Conn. 158, 167 (1993).
The Perkins decision not only reiterates the general FOIA policy considerations, but specifically provides "a comprehensive definition" of what the personal privacy exemption to the FOIA means.
 Although the court has had previous occasions to apply the statutory exemptions for `invasion of personal privacy' in the circumstances of a particular case, see, e.g.; Chairman v. Freedom of Information Commission, [217 Conn. 193 (1991)] supra, 198; we have not undertaken to articulate a comprehensive definition of what that phrase means . . . The time has come to fill the void.
Perkins v. FOIC, 228 Conn. at 169.
In filling the void the Perkins ruling adopts the standard for the invasion of personal privacy tort articulated in the Restatement of Torts, 3 Restatement (Second) Torts § 652D CT Page 694-BB (1977).
Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosures of any matter that "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."
The legitimate concern to the public prong of this standard is aided by a presumption noted in Perkins at 228 Conn. 174: "The legislature has, furthermore, determined that disclosures relating to the employees of public agencies are presumptively legitimate matters of public concern." Also, see Perkins at228 Conn. 177: "Finally, we note that when a person accepts public employment he or she becomes a servant of and accountable to the public. As a result, that person's reasonable expectation of privacy is diminished . . ."
In determining whether a disclosure would be highly offensive to a reasonable person we are assisted by the Comment to § 652D of the Restatement.
 The rules stated in [§ 652D] gives protection against unreasonable publicity, of a kind highly offensive to the ordinary reasonable [person]. The CT Page 694-CC protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens. Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must accept and endure the ordinary incidents of the community life of which he is a part . . . . Even minor and moderate annoyance . . . is not sufficient to give him a cause of action under the rule stated in this Section. It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises.
Perkins v. FOIC, 228 Conn. at 173.
In support of the claim to the exemption, Plaintiffs rely on the individual safety factor in applying § 1-19 (b)(2); recognized in Board of Pardons v. FOIC, 19 Conn. App. 539, cert. denied. 212 Conn. 819 (1989).
The evidence on the individual safety threat is contained in the testimony of Commissioner Rossi of DCF. The Commissioner testified that she was unaware of any specific threats connected CT Page 694-DD with the Emily H. case (Ex. #11, p. 8). Commissioner Rossi indicated specific concerns about Emily H.'s family's drug involvement, gang involvement, and history of violence. The testimony also referenced three other incidents perceived as threats to DCF workers in other cases.
In determining that the disclosures of dossiers relating to prisoners seeking pardons could endanger the lives of prisoners and corrections staff; the Appellate Court in Board of Pardons,supra, relied on generally unspecific testimony about prison violence, and that the dossiers could identify informants and the "sexual vulnerability" of prisoners. The Court noted:
 A file on a prisoner-applicant for pardon is a full dossier of information such as the presentence investigation report,[3] medical reports,[4] psychiatric evaluations,[5] prison work records and disciplinary reports, and other sensitive information that might relate not only to the prisoner-applicant himself but to other inmates and correctional staff as well . . . This confidentiality is integral to the legitimate objective of security and safety that the United States Supreme Court has recognized as being vital to the proper administration of prisons.
In view of the Supreme Court's clear holdings in FOIA cases CT Page 694-EE that generalized concerns are insufficient evidence to establish an FOIA exemption;[6] the Board of Pardons case may hinge on the nature of the records and the prison context. See, General Statutes § 14-10 (d) which exempts judges, prosecutors, police officers and corrections staff from the obligation to disclose their home addresses in connection with motor vehicle registration.
Plaintiffs also rely on the Chairman v. FOIC, supra, decision on the invasion of personal privacy issue. However, Chairman was decided without the benefit of the comprehensive definition of what invasion of personal privacy means, provided for the first time in Perkins, supra. The definition and standards provided byPerkins must be used; thus limiting the precedential value ofChairman.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, CT Page 694-FF probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Departmentof Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that CT Page 694-GG of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator Unemployment Compensation Act, 209 Conn. 381, 385
(1988).
The Court on the facts of this case finds that the Plaintiffs (DCF and its employees) have not demonstrated the applicability of the 1-19 (b)(2) personal privacy exception to the public policy of disclosure of public records, 1-19 (a).
The Plaintiffs have failed to establish either that the CT Page 694-HH disclosure of the names of the employees disciplined in the Emily H. case would be a highly offensive invasion of their personal privacy and/or that the disclosure of the names of such employees is not a legitimate public concern. The failure to establish either ground would require disclosure, Perkins v. FOIC, supra at228 Conn. 172, 173.
In addition to the facts in the Record the court having served in the Superior Court for Juvenile Matters is aware that the names of DCF workers assigned to the case are generally known to the family of any child where a neglect/abuse or uncared for petition is pending. The proceedings are not open to the public, but the parents or guardians are present and all parties in attendance are identified on the record. See Rules of Practice § 1048.1 and 1048.2. DCF is mandated to work with families for reunification in all cases. General Statutes § 17a-110. DCF workers contact the families and encourage contact with the agency. DCF offices are public offices listed in the telephone directory. "Courts may take judicial notice of matters which come to the knowledge of men generally in the course of the ordinary experience of life, and are therefore in the mind of the trier, or they may be matters which are generally accepted by mankind as true and are capable of ready and unquestionable demonstration." (Internal quotation marks and citations omitted.) "The doctrine of judicial notice also applies to administrative agencies." WestCT Page 694-IIHartford v. FOIC, 218 Conn. 256, 264 (1991).
The import of this information is that if retaliation was a real threat, then certainly the workers known to the family should have been aware of such threats or threatening conduct. There is certainly serious danger to DCF workers dispatched to remove children from their parents' arms, or who may delay returning children from foster care placement: the threat is not as obvious from a family whose claim would be that DCF did not do enough to protect the child from the family's abuse, neglect and degraded life style.
What is at issue here is professional reputation not personal safety. General Statutes § 1-19 (b)(2) clearly does not protect the public servant derelict in his/her duty.
The FOIC decision finds independent support to the ordered disclosure because of the obvious legitimate public interest in the highly publicized Emily H. case. The horror of the rape and murder of a nine month old child, following a documented history of abuse and neglect, created a high level of legitimate public interest. The public interest is evident from the Governor's appointment of an "Independent Panel to Investigate the Death of Emily." (Ex. #9.) As noted in Perkins, supra at 173: "Finally, the Restatement recognizes that there is no invasion of a right CT Page 694-JJ to privacy when the subject matter of the publicity is of legitimate public concern. 3. Restatement (Second) Torts § 652D, comment (d) 1977." The "Independent Panel" found as to DCF's performance on the Emily H. case: "evidence of inadequate investigation and casework, compounded by inadequate documentation and inadequate evidence of supervision."
The public is not only legitimately interested as taxpayers who fund DCF, but even more fundamentally, because as a matter of public policy, abused, uncared and/or neglected children are public responsibilities (§ 17a-90). Also, it is not difficult to gather from the outrage attending this child's rape and murder, that the public recognizes a moral responsibility for children in such desperate circumstances.
The appeal is dismissed. The names of the disciplined DCF workers in the Emily H. case are ordered disclosed.
McWEENY, J.