BOARD OF PARDONS *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(5498)

DALY, NORCOTT and FOTI, Js.

Submitted on briefs May 12—decision released August 29, 1989

*Victor R. Perpetua,* commission counsel, *Mitchell W. Pearlman,* general counsel, and *Marianne D. Smith,* assistant general counsel, filed a brief for the appellant (named defendant).

*Carl J. Schuman,* assistant attorney general, *Clarine Nardi Riddle,* acting attorney general, and *John F. Gill,* assistant attorney general, filed a brief for the appellee (plaintiff).

NORCOTT, J. This case is before us on remand from the Supreme Court. The defendant freedom of information commission (FOIC) appealed from the decision of the trial court reversing its order requiring the plaintiff board of pardons (board) to limit its deliberations in future executive sessions to very proscribed circumstances. The FOIC had determined that the records of prisoners applying for pardon are not exempt from disclosure and that the board had violated the Freedom of Information Act by considering such records in executive session.

On appeal, we reversed the judgment of the trial court on jurisdictional grounds, finding that the board was not aggrieved by an order of the FOIC requiring it to conduct future deliberations in public except under certain narrowly defined circumstances. *Board of Pardons* v. *Freedom of Information Commission,* 14 Conn. App. 380, 540 A.2d 1077 (1988). Our Supreme Court reversed, concluding that the board was aggrieved, and remanded the case for determination on the merits of the appeal. *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 556 A.2d 1020 (1989). The underlying facts of this case are fully set forth in our original opinion.

On appeal, the FOIC claims that the trial court erred (1) in concluding that the FOIC based its decision on a misinterpretation of the law concerning prisoners' rights to privacy, (2) in construing the FOIC's order as requiring disclosure of all records considered by the board in its deliberations on prisoners' applications for pardon, and (3) in exceeding the proper scope of judicial review. We find no error.

The trial court found that the FOIC had based its decision requiring the public disclosure of prisoners' records considered by the board in executive session on the untenable proposition that prisoners have minimal privacy interests.[1] We agree with the trial court.

General Statutes § 1-21 (a) authorizes a public agency, after meeting certain procedural requirements, to hold an executive session as defined in General Statutes § 1-18a (e). That section defines an executive session as "a meeting of a public agency at which the public is excluded for one or more of the following purposes . . . (5) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-19." General Statutes § 1-19 (b) provides in pertinent part that "[n]othing in sections 1-15, 1-18a, 1-19 to

---

[1] The pertinent parts of the FOIC's final decision relevant to this claim are as follows:

"18. It is found that the records examined in the course of the respondent's deliberations are in the nature of personnel or medical and similar files.

"19. It is found, however, that the privacy interests of prisoners are at best, minimal.

"20. It is further found that there is a legitimate public interest in the data relating to prisoners being considered for pardons.

"21. It is therefore concluded that to the extent that materials considered by the respondent in its deliberations referred to the prisoner being considered for pardons, disclosure of such materials would not constitute an invasion of personal privacy. Therefore such materials are not exempted from disclosure by § 1-19 (b) (2), General Statutes."

1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require the disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." The FOIC, in its final decision, found that the records examined during the course of the board's April 5, 1982 deliberations were "in the nature of personnel or medical and similar files" under General Statutes § 1-19 (b) (2), but that disclosure of those records would not constitute an invasion of personal privacy. The FOIC distinguished between consideration of material related to persons other than the prisoner-applicant, which it found was exempt from disclosure, and material relating solely to the prisoner-applicant, which it found not to be exempt from disclosure. The FOIC's rationale for this distinction was that prisoner-applicant material was not protected from disclosure because "the privacy interests of prisoners are at best, minimal." We find the FOIC's analysis faulty.

We note that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price* v. *Johnston,* 334 U.S. 266, 285, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948). Regarding the right of privacy implicated by government searches and seizures, the United States Supreme Court has held that the right "in *traditional* Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." (Emphasis added.) *Hudson* v. *Palmer,* 468 U.S. 517, 527–28, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). In curtailing certain rights of inmates, the United States Supreme Court has recognized that the very tense and potentially explosive nature of correctional institutions poses a constant threat to both inmates and correctional personnel alike. See *Jones* v.

*North Carolina Prisoners' Union,* 433 U.S. 119, 132, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977). Further, "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell* v. *Procunier,* 417 U.S. 817, 823, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974).

The board argues that to protect a prisoner's safety and the safety of correctional staff, whose job it is to supervise inmates, it is imperative that certain personal information concerning prisoners be kept from public disclosure. As examples of such information, the board and the trial court cited material disclosing an applicant's "sexual vulnerability" and whether the applicant had served as an "informant" while incarcerated. Balanced against these legitimate penal interests is, as the FOIC contends, the legitimate public interest in the data relating to prisoners being considered for pardons. Although the FOIC analogizes the importance of access to the board's deliberations to public access to a criminal trial, that analogy is not valid. The FOIC fails to recognize that the board's deliberations are sensitive, complicated proceedings involving the strong interest of correction officials in maintaining safety and order in our prisons. "In deciding whether to grant a pardon or to commute a prison sentence, the board 'depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior . . . .' *Connecticut Board of Pardons* v. *Dumschat,* 452 U.S. 458, 464, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981)." *Board of Pardons* v. *Freedom of Information Commission,* supra, 651.

A file on a prisoner-applicant for pardon is a full dossier of information such as the presentence investigation report, medical reports, psychiatric evaluations, prison work records and disciplinary reports and other sensitive information that might relate not only to the prisoner-applicant himself but to other inmates and cor-

rectional staff as well. We cannot conceive of the board's conducting its discussions of a prisoner's application for pardon without implicating, in some respect, his relation to nonapplicant inmates, necessitating discussion of the records of nonapplicants. A certain amount of overlap is unavoidable during the board's discussions. Members of the board should be allowed to discuss these sensitive matters in executive session, with certain information regarding applicants, other inmates and correctional staff shielded by the protection of confidentiality. This confidentiality is integral to the legitimate objectives of security and safety that the United States Supreme Court has recognized as being vital to the proper administration of prisons.

Moreover, the Connecticut Freedom of Information Act does not provide that prisoners who petition for pardons have no right to privacy with respect to exempted materials under § 1-19 (b) (2). The trial court therefore properly rejected the defendant's argument to the contrary. "Although our Freedom of Information Act does not derive from any model act or the federal Freedom of Information Act, other similar acts, because they are in pari materia, are interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 333, 435 A.2d 353 (1980). As the Supreme Court did in *Wilson,* we now compare the federal Freedom of Information Act, 5 U.S.C. § 552 (b) (6),[2] with the state act, General Statutes § 1-19 (b) (2). We note that the disclosure requirements are almost identical and that in *Department of State* v. *Washington Post Co.,*

---

[2] 5 U.S.C. § 552 provides in pertinent part: "(a) Each agency shall make available to the public information as follows . . .

"(b) This section does not apply to matters that are—

"(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ."

456 U.S. 595, 599, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982), the United States Supreme Court determined that the primary purpose of Congress in enacting exemption (6) was to exclude those files the disclosure of which might harm the individual. The court discussed harm to the individual in terms of protecting individuals from "the injury and embarrassment that can result from the unnecessary disclosure of personal information." Id. We find this reasoning particularly persuasive in the present case, when one considers that the potential harm involved is the endangerment of human life. We conclude that the trial court did not err in rejecting the FOIC's claim that prisoner-applicants have no right to privacy in their personal data.

The FOIC's second claim of error involves its order regarding the April 5, 1982 deliberations of the board. After concluding that the disclosure of the records examined by the board in executive session would not have constituted an unwarranted invasion of privacy, the FOIC entered the following order: "Henceforth the respondent shall conduct its deliberations in executive session only when such deliberations would result in the disclosure of public records or the information contained therein exempted from disclosure by § 1-19 (b), General Statutes, or when otherwise permitted by the language of § 1-18a (e), General Statutes." The FOIC first contends that the trial court has misconstrued this order. It argues that the order does not require disclosure of any records considered by the board at the April 5, 1982 meeting or require the board to disclose similar records in the future. We disagree.

In light of the FOIC's rationale regarding the minimal privacy rights of prisoners, the order has erroneously limited the effect of General Statutes § 1-19 (b). Although there may well be information regarding prisoners applying for pardon that is "public" in nature, the FOIC, by its order, has determined that the types

of information covered by § 1-19 (b) (2) are not exempt for these prisoner-applicants. Although the FOIC's order here did not mandate the disclosure of any of the records considered by the board during its April 5, 1982 deliberations, the effect of the *in futuro* order is to preclude the board from ever again discussing in executive session certain personal data concerning prisoners who are applicants for a pardon. The FOIC order, if left intact, would have the same chilling effect on the board during its next session as that noted by our Supreme Court in *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 502, 503 A.2d 1161 (1986). We conclude that the trial court did not err in construing the FOIC order as requiring the disclosure of personal records of any prisoner-applicant that are otherwise exempted under General Statutes § 1-19 (b) (2).

The FOIC also claims that the trial court exceeded its authority under General Statutes § 4-183 (g). The essence of this claim is that the scope of the trial court's review in this case was limited to determining whether the FOIC decision was reasonably supported by the evidence before it and that the trial court exceeded that charge. We disagree.

"Judicial review of [an administrative agency's] actions is governed by the Uniform Administrative Procedure Act [General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted." *Lawrence* v. *Kozlowski,* 171 Conn. 705, 707, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). " 'The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion.' " *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988), quoting *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981).

General Statutes (Rev. to 1983) § 4-183 (g), in effect at the commencement of this action, provided: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The trial court's reversal of the FOIC decision, as based on "an unsound proposition of law," was authorized by § 4-183 (g) (4). Accordingly, we conclude that the trial court did not exceed the scope of its judicial review.

The process by which the board conducts its affairs, together with the potentially volatile subject matter that must be discussed in its deliberations, require that the shield of confidentiality provided by General Statutes § 1-19 (b) (2) protect the records of prisoner-applicants for pardons. Although there may be data concerning prisoner-applicants that is subject to disclosure, we conclude that the trial court did not err in rejecting the FOIC's removing of the shield of confidentiality from those materials that properly belong under General Statutes § 1-19 (b) (2).

There is no error.

In this opinion the other judges concurred.