STATE OF CONNECTICUT *v.* CAMERON MOUNDS
(AC 28126)

Bishop, Lavine and Robinson, Js.

Argued May 19—officially released August 26, 2008

*Robert E. Byron*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robert Diaz*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Cameron Mounds, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a

person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics in violation of General Statutes § 21a-279 (a) and interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress and (2) rejected his claims that the state, during jury selection, exercised certain peremptory challenges in a racially discriminatory manner. We affirm the judgment of the trial court.

I

The defendant filed a motion to suppress items seized by Hartford police officers on January 28, 2006. In his motion, the defendant asserted that the evidence was obtained as a result of an illegal warrantless arrest and that the subsequent warrantless search of his person and automobile lacked probable cause.

On June 5, 2006, the court, in an oral ruling, denied the motion to suppress. The court found the following relevant facts. On January 28, 2006, at 7:30 p.m., Officers Luis Poma and Abhilagh Pillai of the Hartford police department, responded to information received about activity at 230 Mather Street in Hartford. The owner had a standing complaint with the police to investigate any unauthorized activity on his property. The building was posted with "no loitering" signs and at least one "no trespassing" sign in a manner reasonably likely to come to the attention of intruders. As Poma approached the building, he could see the signs, and he also saw a van in the narrow driveway of the building, the engine running but with the lights off. There was one occupant in the van. The officers drove their cruiser into the driveway in such a manner that the defendant was not free to leave.

The officers approached the vehicle and identified the defendant as the driver of the van. The defendant

was acting nervously, looking over his shoulder and making furtive movements with his right hand toward the back of his waist. When the officers asked why the defendant was there, he did not answer. When the officers then asked the defendant to show his hands, he did not comply, and the vehicle at some point started to move. At this juncture, the defendant was again told to show his hands or risk arrest. Still, he did not comply, and he refused to get out of the van. When the officers removed the defendant from the vehicle, he began flailing his arms as the officers arrested him for the crimes of interfering with an officer and criminal trespass in the third degree.

The record reflects that after the officers arrested the defendant, they searched his person and found a clear plastic bag tucked into the back of his waistband containing ten small bags, each filled with a white, rock like substance. The officers then searched the defendant's vehicle where they found $605 in small bills.

The court concluded that the officers had a reasonable and articulable suspicion that the defendant was trespassing at the point that they blocked his vehicle from leaving the driveway. Additionally, the court concluded that once the officers validly stopped the defendant and attempted to speak with him, they gained probable cause to arrest him for the crimes of interfering with an officer and criminal trespass in the third degree. Therefore, the court found that because the police had probable cause to arrest the defendant, they could properly search him and his motor vehicle in conjunction with his arrest.

Following the court's denial of the defendant's motion to suppress and a trial to the jury, the defendant was convicted of possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics and interfering with an officer. He

was sentenced to the custody of the commissioner of correction for twenty years, execution suspended after twelve years, with a five year mandatory minimum, and five years probation. This appeal followed.

The defendant claims that the court incorrectly denied his motion to suppress evidence seized from his person and his vehicle because the officers lacked a reasonable and articulable suspicion of criminal activity sufficient to conduct an investigatory detention. The defendant claims that the officers violated his constitutional rights as protected by the fourth amendment to the United States constitution, and by article first, §§ 7 and 9, of the Connecticut constitution. As part of this claim, the defendant takes issue with the court's factual determination that Poma saw the building's signs on the evening of January 28, 2006.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . [W]e engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . We give great deference to the findings of the trial court because it weighs the evidence before it and assesses the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Linarte*, 107 Conn. App. 93, 98, 944 A.2d 369 (2008).

We first address the defendant's claim that the court made a factual determination in conjunction with its ruling on the motion to suppress that was not supported by the record. Specifically, the defendant claims that the court incorrectly determined that Poma could see

signs on the building prohibiting loitering and trespassing. The record reveals that during the suppression hearing, Poma testified that he had no difficulty seeing the building's signs on the evening in question. On recross-examination, when the defendant's attorney asked Poma if he had any trouble seeing the signs at night, Poma replied that he could see the signs at night from the light of his vehicle's headlights. Because the court was free to credit Poma's testimony, we cannot conclude that this finding was clearly erroneous. Accordingly, this evidentiary challenge to the court's findings is without merit.

Next, we address the defendant's claim that the court incorrectly concluded that the officers had a reasonable and articulable suspicion of criminal activity justifying the investigatory detention. "The federal and state law of search and seizure in this area is well settled. Under the fourth amendment to the United States constitution and article first, [§ 7] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . .

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . Thus, [r]easonable and articulable suspicion is . . . based not on the officer's inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. . . . What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances. . . . The determination of

whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 470–71, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005).

The state concedes that the defendant was seized once the officers blocked the van with their vehicle. At issue, however, is whether the court properly concluded that the seizure was based on a reasonable and articulable suspicion. "A stop by the police is warranted only if the officer can point to specific and articulable facts that, together with rational inferences from those facts, reasonably warrant the intrusion." *State* v. *Bolanos*, 58 Conn. App. 365, 368, 753 A.2d 943 (2000).

Here, the officers had ample information to support a reasonable and articulable suspicion to conduct an investigatory stop for criminal trespass. They were aware of the owner's standing complaint to investigate any unauthorized activity at 230 Mather Street, the building was posted with "no trespassing" and "no loitering" signs, and the defendant's vehicle was parked at 230 Mather Street in the dark, with its engine running and lights off. Furthermore, the officers received information that there was narcotics activity taking place at 230 Mather Street that evening, and Poma had been to the residence several times before on complaints about narcotics activity. Under these facts, the court properly determined that the officers had a reasonable and articulable suspicion that the defendant was trespassing and therefore were justified in proceeding with an investigatory stop of the defendant's vehicle.

The next focus of our inquiry is whether there was probable cause to arrest the defendant on the criminal trespass and interfering with an officer charges. If there

was probable cause to arrest the defendant for either crime, the police had the authority to search the defendant and the van in conjunction with his arrest.

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal." (Internal quotation marks omitted.) *State* v. *Johnson,* 286 Conn. 427, 433, 944 A.2d 297 (2008). "The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test." (Internal quotation marks omitted.) *State* v. *Hedge,* 59 Conn. App. 272, 278, 756 A.2d 319 (2000). "With respect to warrantless arrests . . . the trial court, in determining whether the arrest is supported by probable cause, is required to make a practical, nontechnical decision whether, under all the circumstances . . . there is a fair probability that the defendant had committed or was committing a felony." (Internal quotation marks omitted.) Id. It is also important to note that "[t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." (Internal quotation marks omitted.) *State* v. *Holloman,* 20 Conn. App. 521, 527–28, 568 A.2d 1052, cert. denied, 214 Conn. 805, 573 A.2d 317 (1990).

As noted, the property at 230 Mather Street was posted with "no parking," "no loitering" and "no trespassing" signs. The officers repeatedly asked the defendant why he was parked in the private drive, but the defendant did not answer their questions. Poma testified that the defendant appeared nervous and kept looking over his shoulder while the police questioned him. Additionally, while the officers were questioning him, the defendant made furtive movements with his right

hand, sliding it behind his back toward his waistband. The officers repeatedly asked the defendant to show his hands, yet he failed to comply and started moving his van forward. Poma told the defendant that if he did not stop his vehicle and show his hands, he would be placed under arrest for trespassing. Again, the defendant did not comply. The defendant was then told to exit the vehicle and that he was under arrest on the interfering with an officer and criminal trespass charges. The defendant refused to exit the vehicle and began flailing his arms when the officers attempted to remove him. Thus, at this juncture, the officers had probable cause to arrest him for the crime of interfering with an officer. See *State* v. *Aloi*, 280 Conn. 824, 911 A.2d 1086 (2007) (interfering interpreted broadly to prohibit any act that would amount to hampering police in performance of their duties).

Because the arrest on the charge of interfering with an officer was lawful, the search that was incident to that arrest was valid under the circumstances. See *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999) (warrantless search incident to lawful arrest valid). Accordingly, the court properly denied the defendant's motion to suppress.

## II

The defendant, who is African-American, next claims that the state, in selecting the jury, improperly used peremptory challenges to strike two African-American venirepersons in a discriminatory manner, in violation of *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We conclude that the defendant waived his right to raise a *Batson* claim on appeal.

The following additional facts are relevant to the defendant's claim. Jury selection for the defendant's trial began on May 22, 2006, and concluded on June 22, 2006. The court granted each party eight peremptory

challenges. Of those, the state used eight, two of which pertained to venirepersons both the prosecution and defense perceived to be African-Americans.[1] Once the prosecutor exercised peremptory challenges to excuse these individuals, the defendant challenged the prosecutor's action as discriminatory under *Batson*. The court then asked the state to provide its reasons for the peremptory challenges. The state explained that the first venireperson was excused because she did not understand the difference between "beyond all doubt" and "beyond a reasonable doubt." The second venireperson was excused because he indicated that he had reservations about sending someone to jail and because twenty-six years ago he had been convicted as an accessory, an experience that the state believed would affect his judgment. The court rejected the defendant's *Batson* challenges, concluding that in each instance, the state had provided credible, race neutral reasons for exercising its peremptory challenge. The defendant did not contest the court's acceptance of the prosecutor's explanations regarding either potential juror.

"[T]he United States Supreme Court recognized [in *Batson*] that a claim of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole . . . . The court concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his [or her] view concerning the outcome of the case to be tried . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . . .

---

[1] We recognize that the designation "African-American" may have racial, ethnic and place of origin connotations and that many individuals referred to as African-Americans may, in fact, trace their origins to places other than Africa. Because, in this case, both the prosecution and defense perceived the venirepersons in question to be African-American, and the defendant is African-American, we need not, in this instance, further discuss whether

"Under Connecticut law, [o]nce a [party] asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual . . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination. . . .

"We have identified several specific factors that may indicate that [a party's removal] of a venireperson through a peremptory challenge was . . . motivated [by race or gender]. These include, but are not limited to: (1) [t]he reasons given for the challenge were not related to the trial of the case . . . (2) the [party exercising the peremptory strike] failed to question the challenged juror or only questioned him or her in a perfunctory manner . . . (3) prospective jurors of one race [or gender] were asked a question to elicit a particular response that was not asked of the other jurors . . . (4) persons with the same or similar characteristics but not the same race [or gender] as the challenged juror were not struck . . . (5) the [party exercising the peremptory strike] advanced an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically . . . and (6) the [party exercising the peremptory strike] used a disproportionate number of peremptory challenges to exclude members of one race [or gender]. . . .

"In assessing the reasons proffered in support of the use of a peremptory challenge . . . [a]n explanation . . . need not . . . be pigeon-holed as wholly acceptable or wholly unacceptable . . . and even where the acceptability of a particular explanation is doubtful, the inquiry is not at an end. In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to

---

either venireperson was, in fact, an American of African ancestry as opposed to lineage pointing to another geographic area.

assess each explanation in light of all the other evidence relevant to prosecutorial intent. The officer may think a dubious explanation undermines the bona fides of other explanations or may think that the sound explanations dispel the doubt raised by a questionable one. As with most inquiries into state of mind, the ultimate determination depends on an aggregate assessment of all the circumstances. . . .

"Finally, the trial court's decision on the question of discriminatory intent represents a finding of fact that will necessarily turn on the court's evaluation of the demeanor and credibility of the attorney of the party exercising the peremptory challenge. . . . Accordingly, a trial court's determination that there has or has not been intentional discrimination is afforded great deference and will not be disturbed unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *State* v. *Hamlett*, 105 Conn. App. 862, 876–78, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008).

In this instance, once the state set forth its reasons for excusing both venirepersons, the defendant made no effort to convince the court that the reasons were pretextual. Therefore, the only logical inference that the court could have drawn from the defendant's silence was that he accepted the state's neutral reasons for the peremptory challenges. See id. The defendant's failure to claim that the reasons given by the state were pretextual prevents him from attempting to make that claim for the first time on appeal. As we have often stated, we will not consider claims not made before the trial court and raised for the first time on appeal. See *McGuire* v. *McGuire*, 102 Conn. App. 79, 87, 924 A.2d 886 (2007) (where party fails to raise claim in trial court, it is unfair to consider it on appeal).

The judgment is affirmed.

In this opinion the other judges concurred.