## STATE OF CONNECTICUT *v.* ROBERT DIXON
## (AC 28587)

Bishop, Gruendel and Borden, Js.

Argued October 31, 2008—officially released April 28, 2009

1

*Ruth Daniella Weissman,* special public defender, for the appellant (defendant).

*Richard K. Greenalch, Jr.,* special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Maxine V. Wilensky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Robert Dixon, appeals from the judgment of conviction rendered by the trial court, after a plea of guilty pursuant to the *Alford* doctrine,[1] of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), unlawful restraint in the first degree in violation of General Statutes § 53a-95, and attempt to commit assault in the second degree in violation of General Statutes §§ 53a-49 and 53a-60 (a) (1). Before sentencing the defendant,

[1] *"North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), holds that a criminal defendant need not admit guilt but may consent to being punished as if he is guilty to avoid the risk of proceeding to trial." *State* v. *Sutton,* 95 Conn. App. 139, 140 n.1, 895 A.2d 805, cert. denied, 278 Conn. 920, 901 A.2d 45 (2006).

the court denied his oral motion to redact the presentence investigation report (report). The defendant claims that with respect to the section of the report devoted to his current personal history, (1) the entire section should be suppressed as materially false and unreliable, or, in the alternative, (2) it should be redacted in large part so as to remove certain references to unreliable innuendo. We disagree and therefore affirm the judgment of the trial court.

The following procedural history is undisputed. On September 21, 2007, the defendant entered into an agreement to plead guilty under the *Alford* doctrine to sexual assault in the third degree, unlawful restraint in the first degree and attempt to commit assault in the second degree. The state and the defendant agreed on a recommendation for a total effective sentence of fifteen years incarceration, execution suspended after ten years, followed by ten years of probation, with the following conditions of probation: (1) no contact with the victim; (2) registration as a sex offender for life; and (3) sex offender evaluation and treatment as deemed appropriate by the office of adult probation. Although the defendant was willing to waive a report, the court ordered one to be prepared.

As disclosed by the plea proceedings, the following facts underlie the offenses and are not challenged by the defendant. On May 1, 2006, the victim,[2] an intern at a social service agency in New Haven, made a home visit to an apartment on Munson Street to counsel a woman who lived there. When the victim arrived, she was greeted by the defendant, who recognized her from previous visits. The defendant told the victim that the woman for whom she was looking was in the shower

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

and that he would go get her. The victim then entered the apartment and sat down on the couch. The defendant returned naked and sat down next to the victim. The victim told the defendant that she was uncomfortable and had to leave. When the victim attempted to leave, the defendant blocked the door, preventing her from leaving.

The defendant then pushed the victim backward into a bedroom and onto the floor, straddled the victim and demanded that she masturbate him. When the victim refused, the defendant began to choke the victim, causing bruising on her neck and shoulder blades. The victim pleaded with him not to hurt her and indicated that she would comply with his demand. After the defendant ejaculated, he forced the victim to give him her wallet. He removed $30 from the wallet and took her cellular telephone from her purse. The defendant was arrested later that same day.

On January 12, 2007, the sentencing hearing took place. The court first noted the agreed recommendation for sentencing and then stated that it had read the report, which, the court stated, was "in twenty-one years as a judge . . . probably the worst presentence investigation report I've ever read for a sex offender." The court indicated that the defendant "is in a revolving door situation. There's no question in my mind that once he's released, he'll be back into the system."

The state contended that, in agreement with the conclusion of the report, the defendant "presents a danger to the community," shows no remorse, has no employment experience, has a lengthy history of involvement with social service agencies and the criminal justice system and has demonstrated repeatedly his failure to respond to any kind of intervention that had been fashioned for him. The state also noted that according to the report, the defendant "has a lengthy history of sexual

misconduct . . . [and] has not been amenable to treatment." The state urged that the defendant "be removed from society, not only as punishment but certainly for the protection of the public." The victim's advocate then read written statements by the victim and her mother.

The defendant, through counsel, requested that the court exercise its discretion to redact five specific portions of the report, referring to them by page and line number. The basis of the defendant's request was that the portions sought to be redacted were unreliable because they constituted "hearsay within hearsay," did not identify the individual source of the hearsay, were not under oath or subject to cross-examination and the court could not determine the demeanor of the declarants. Although the defendant recognized that the court would not be relying on the report when fashioning the sentence because his plea was in accordance with an agreed recommendation, he nonetheless urged the court to make the redactions because they would be "very damaging down the line" for purposes of possible decisions regarding the defendant by the department of correction or the parole or probation authorities.

In general terms, the five specific portions of the report that the defendant sought to have redacted were as follows. The first referred to a discharge summary upon the defendant's release from an in-home services program provided by the department of children and families (department) and reported a history of sexual molestation of, and certain youthful sexual behavior by, the defendant and a course of mental health treatment. The second referred to the defendant's placement in a residential treatment center for young offenders for sexual offender evaluation and summarized the records of that placement. The third referred to an acknowledgment by the defendant of certain youthful

sexual behavior. The fourth referred to the department's summary of the defendant's placement in a residential facility for sexual offenders in Pennsylvania and his social worker's opinion regarding his behavior in that facility. The fifth referred to records of the department regarding the defendant's former girlfriend and described incidents during which the defendant was present in the girlfriend's home and his interaction with the girlfriend and her children.

The court denied the defendant's motion to redact. It stated that the information sought to be redacted played "no part in [its] decision as to what [it] thought would be a fair and appropriate sentence" for the defendant. It also stated that the information had sufficient reliability to be used by the court in sentencing and that it was "important for the department of correction to have a full picture of [the defendant] so they know exactly who and what they are dealing with." The court then imposed the agreed upon sentence. This appeal followed.

It is useful to begin by noting what is not properly before us. First, the defendant does not challenge the sentence imposed by the court. Thus, he does not claim that the parts of the report that he challenges on appeal resulted in an improper sentence. Second, although on appeal the defendant claims that the entire report should be suppressed by this court, or, in the alternative, that certain parts of the report that were not challenged in the trial court should nonetheless be redacted by this court, we decline to consider those claims. This is because those claims were not presented to the trial court; we do not ordinarily consider claims that were not so presented; *State* v. *Mounds*, 110 Conn. App. 10, 21, 953 A.2d 938, cert. denied, 289 Conn. 938, 958 A.2d 1247 (2008); and the defendant has not properly claimed to prevail under *State* v. *Golding*, 213 Conn. 233, 567

A.2d 823 (1989), or the plain error doctrine.[3] See Practice Book § 60-5.

Thus, the only claim that is properly before us is the claim that the court abused its discretion in failing to redact the five portions of the report that the defendant challenged in that court. This claim, however, founders on the notion that, as the state argues, it is not cognizable in this court because the defendant does not challenge the sentence imposed by the court. "The sole purpose [of a report] is to enable the court, within limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime." (Internal quotation marks omitted.) *State* v. *Miller*, 56 Conn. App. 191, 201, 742 A.2d 402 (1999), cert. denied, 252 Conn. 937, 747 A.2d 4 (2000), quoting *State* v. *Patterson*, 236 Conn. 561, 574, 674 A.2d 416 (1996); see also *State* v. *Collette*, 199 Conn. 308, 321, 507 A.2d 99 (1986) (mere reference in report to information outside record does not require sentence to be set aside unless defendant shows information materially false and unreliable and court relied on information in determining sentence). That being so, in the absence of a challenge to the sentence itself, ordinarily a claim of abuse of discretion in failing to redact certain portions of a report is not cognizable on appeal. Moreover, it has been held that a defendant has no constitutional liberty interest in the accuracy of such a report. See *Pouncey* v. *Commissioner of Correction*, 84 Conn. App. 734, 738–39, 854 A.2d 1129 (2004). These authorities suggest that a defendant who does not challenge his sentence has no judicial remedy, by way of direct appeal or habeas corpus, to redact inaccurate statements of fact in a report. We are

[3] Although the defendant did not present a *Golding* or plain error analysis in his opening brief to this court, he attempted to do so in his reply brief. That is unavailing, however, because it is well established that such claims may not be presented for the first time in a reply brief. See, e.g., *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 60–61, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

not prepared, however, to say this would be true in all cases.

Under Practice Book § 43-10 (1), a defendant has a right to controvert a report prior to sentencing.[4] It is also true that this section contemplates that a report will follow the defendant into the correctional system for appropriate use by those officials. In fact, General Statutes § 54-91a (c)[5] requires that such a report accompany a defendant into that system. Thus, it may be that even in a case in which a defendant does not challenge the legality of his sentence, there might be some misstatements in a report that are so patently false, unreliable and harmful to the defendant's future incarceration, probation or parole that he could challenge them on direct appeal from the sentence.

[4] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence . . . after the acceptance of a plea of guilty . . . the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert the presentence investigation report . . . relied upon by the judicial authority in imposing sentence. When the judicial authority finds that any significant information contained in the presentence report . . . is inaccurate, it shall order the office of adult probation to amend all copies of any such report in its possession and in the clerk's file, and to provide both parties with an amendment containing the corrected information. . . ."

[5] General Statutes § 54-91a (c) provides: "Whenever an investigation is required, the probation officer shall promptly inquire into the circumstances of the offense, the attitude of the complainant or victim, or of the immediate family where possible in cases of homicide, and the criminal record, social history and present condition of the defendant. Such investigation shall include an inquiry into any damages suffered by the victim, including medical expenses, loss of earnings and property loss. All local and state police agencies shall furnish to the probation officer such criminal records as the probation officer may request. When in the opinion of the court or the investigating authority it is desirable, such investigation shall include a physical and mental examination of the defendant. *If the defendant is committed to any institution, the investigating agency shall send the reports of such investigation to the institution at the time of commitment.*" (Emphasis added.)

The present case, however, does not present such a circumstance. The five portions of the report challenged by the defendant in the trial court fall well within the bounds of reliability, as the court found.

This leaves only the question of the rescript. The concurring opinion contends that this court should dismiss the appeal for lack of subject matter jurisdiction, rather than affirm the judgment appealed from because (1) the defendant was the prevailing party in the trial court in that the judgment was the result of his own plea and (2) the likely future harm to him from the material in the report of which he complains is too speculative and conjectural. We disagree.

First, although the defendant received the benefit of the plea agreement in the trial court, so did the state. Therefore, neither he nor the state may accurately be considered the prevailing party. More importantly, he did not prevail on the precise issue that he raises on appeal, namely, the court's refusal to redact the report.

Second, although we agree with the concurrence that aggrievement or standing to appeal requires something more than conjecture or speculation of injury; see *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 465–66, 673 A.2d 484 (1996); we disagree that the likely effects of the report on the defendant fall into that category. In our view, it is neither conjectural nor speculative that the entire report will be used by both correction and parole officials in making their decisions regarding the defendant's incarceration and possible parole. Indeed, that is precisely why the rules of practice contemplate that the report accompany the defendant into the correctional system; see *Board of Pardons* v. *Freedom of Information Commission*, 19 Conn. App. 539, 543, 563 A.2d 314 (board of pardons considers report, along with all other information, in determining whether to issue pardon), cert.

denied, 212 Conn. 819, 565 A.2d 539 (1989); and specifically why the court in this case declined to amend the report.

Thus, the point of the authorities cited previously for the proposition that a defendant who does not challenge his sentence has no judicial remedy, by way of direct appeal or habeas corpus, to redact inaccurate statements of fact in a presentence investigation report, is not that those statements may not affect his future incarceration. The point is, instead, that despite the fact that the statements may affect his future incarceration, he nonetheless may not challenge them by way of appeal or habeas corpus.

We therefore conclude that this court has subject matter jurisdiction over the defendant's appeal. Consequently, the appropriate rescript is to affirm the judgment.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

BISHOP, J., concurring. "It is well established that the subject matter jurisdiction of the Appellate Court. . . . is governed by [General Statutes] § 52-263, which provides that an *aggrieved party* may appeal to the court having jurisdiction from the *final judgment* of the court." (Emphasis in original; internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000). "In a criminal proceeding, there is no final judgment until the imposition of a sentence." (Internal quotation marks omitted.) *State* v. *Jenkins*, 288 Conn. 610, 617, 954 A.2d 806 (2008).[1]

---

[1] Pursuant to General Statutes § 54-95, appellate criminal jurisdiction lies when there is an appeal from a final judgment. See *State* v. *Piorkowski*, 236 Conn. 388, 401, 672 A.2d 921 (1996). Generally, to have standing, one who appeals from a final judgment must claim to be aggrieved by it. See *State* v. *T.D.*, 286 Conn. 353, 944 A.2d 288 (2008). In this instance, the defendant makes no such claim; rather, he claims to be aggrieved by a pretrial decision of the court not connected to its judgment.

In this case, it is clear there is a final judgment; the defendant, Robert Dixon, has been convicted by plea and sentenced. Although the defendant nominally appeals from the judgment, he seeks no relief from it. He asks this court to take no action with respect to the judgment of conviction or the sentence imposed, as both were the fruits of plea negotiations. He does not claim that he has been wrongfully convicted or illegally sentenced, nor does he ask that his conviction be reversed or that his sentence be vacated or modified. In sum, he claims no aggrievement from either his conviction or the sentence he received. Rather, the defendant complains of a ruling made by the court regarding portions of his presentence investigation report. On appeal, he seeks an order redacting certain portions of that report that he believes are inaccurate and potentially harmful to him. Although "[t]he sole purpose [of a presentence investigation report] is to enable the court . . . to impose an appropriate penalty"; (internal quotation marks omitted) *State* v. *Patterson*, 236 Conn. 561, 574, 674 A.2d 416 (1996); the defendant does not claim that the court improperly considered the report in imposing his sentence. Thus, the defendant's claim regarding the contents of the presentence investigation report have no connection to the terms of the judgment.

Normally, a party who prevails in the trial court is not aggrieved. *Seymour* v. *Seymour*, 262 Conn. 107, 110, 809 A.2d 1114 (2002). In a sense, the defendant in this instance may be said to have prevailed in the trial court because he was convicted by his own plea and received an agreed sentence. On that basis, he cannot be said to be aggrieved by the judgment.

There is, however, a narrow band of cases in which a prevailing party may nevertheless be aggrieved by a decision of the court entered during the course of proceedings leading to a judgment. In such cases, one may be able to demonstrate that such an order of the

court is likely to have an adverse effect on his legal interests in a future proceeding. Thus, for example, it has been stated that "a prevailing party may appeal a collateral adverse ruling that can serve as a basis for the bar of res judicata, collateral estoppel, or law of the case in the same or other litigation." 4 C.J.S. 236, Appeal and Error § 252 (2007). To be aggrieved by such a decision, however, an appellant must demonstrate that the attendant deprivation of his right is likely and not merely speculative, "concrete and particularized . . . and . . . actual or imminent, not conjectural or hypothetical . . . ." (Citations omitted; internal quotation marks omitted.) *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).[2]

In this instance, the defendant makes no such particularized claims. Rather, he claims that he is harmed by the "libelous innuendo" contained in the report because it may, at some uncertain point in the future, impact his conditions of incarceration or his eligibility for parole or probation. The defendant's claim, however, is contingent on the occurrence of some event that has not, and may not, happen. Therefore, the consideration of the issue he raises on appeal would require us to engage in speculation and conjecture regarding events yet to occur.

---

[2] For example, in the matter of *In re Allison G.*, 276 Conn. 146, 883 A.2d 1226 (2005), our Supreme Court permitted an appeal by the department of children and families (department) even though the trial court had found in favor of the department on one count of a two count petition alleging, in one count that the child was uncared for and, in another count, that the child was neglected. In adjudicating the matter, the trial court granted the relief sought by the department, the commitment of the child to the department, and found in favor of it on the "uncared for" count but dismissed the neglect count. Even though the department prevailed at trial, the Supreme Court, on review, found that the department was aggrieved by the dismissal of the neglect count on the ground that an adjudication of that count likely would affect the course of future proceedings between the department and the parents of the child.

Under these circumstances, because the claims made by the defendant are inadequate to demonstrate his aggrievement, it is likely this court has no subject matter jurisdiction over this appeal. Accordingly, rather than affirming the judgment of the trial court, I would invite the parties to submit supplemental briefs to this court on the question of whether this matter should be dismissed for lack of subject matter jurisdiction.[3]

---

[3] In reaching this view, I offer no opinion on what other legal and, or, equitable avenues of redress may be available to the defendant administratively or in the trial court concerning the contents of the subject presentence investigation report.