******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEFFERSON SOLAR, LLC *v.* FUELCELL
ENERGY, INC., ET AL.
(AC 44777)

Elgo, Cradle and Alexander, Js.

*Syllabus*

The plaintiff, an energy company, sought to recover damages for, inter alia, an alleged violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.), in connection with an alleged false bid certification submitted by the defendants, competing energy companies, in an attempt to secure a long-term clean energy contract with a utility company. As part of the bidding process, the defendants were required to demonstrate that they had full control over the property for the proposed energy facility. The plaintiff alleged that the city of Danbury, in executing an option agreement to lease certain land to the defendants, failed to comply with the city charter and with statutory notice requirements, which effectively invalidated the defendants' option agreement. The plaintiff claimed it suffered damages in lost revenue that it would have received in securing the contract but for the defendants' false bid certification that was ultimately chosen. Thereafter, the defendants filed a motion to dismiss the complaint on the ground that the plaintiff lacked standing to pursue its CUTPA claim, which the trial court granted. On the plaintiff's appeal to this court, *held*: the trial court did not err in concluding that the plaintiff lacked standing to maintain its CUTPA action against the defendants, as the plaintiff's claims were remote and indirect because, if the defendants' knowingly submitted a false bid and the option agreement was unlawful and without legal effect as the plaintiff alleged, the utility company that was a party to the energy facility contract would have been a directly injured party and would have been best suited to seek a remedy for the harm; moreover, although the plaintiff claimed that it was certain to have received the contract in question if the defendants lacked the necessary site control, because that contention was not alleged in the operative complaint and was undermined by the plain language of the request for bids, which stated that the utility company retained discretion in awarding shared clean energy facility contracts and reserved the right to reject any or all offers, the plaintiff's purported injuries were purely speculative.

Argued March 1—officially released June 14, 2022

*Procedural History*

Action to recover damages for, inter alia, a violation of the Connecticut Unfair Trade Practices Act, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Young, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Thomas Melone*, for the appellant (plaintiff).

*Proloy K. Das*, with whom were *Jennifer M. DelMonico* and, on the brief, *Terence J. Brunau*, for the appellees (defendants).

*Opinion*

PER CURIAM. The plaintiff, Jefferson Solar, LLC, appeals from the judgment of the trial court granting the motion to dismiss filed by the defendants, FuelCell Energy, Inc. (FuelCell), and SCEF1 Fuel Cell, LLC (company). On appeal, the plaintiff claims that the court improperly concluded that it lacked standing to maintain an action under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . In deciding a jurisdictional question raised by a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . [W]hen the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GMBH*, 340 Conn. 266, 269–70, 264 A.3d 1 (2021).

This case concerns the procurement of a long-term agreement for a clean energy facility. Appended to the defendants' motion to dismiss, as an exhibit to the affidavit of Frank Wolak, senior vice president of sales at FuelCell, was a request for production (request) jointly issued by Eversource Energy and the United Illuminating Company (United Illuminating) on April 30, 2020, for a contract to sell energy pursuant to the shared clean energy facility program codified in General Statutes § 16-244z. All such contracts require approval by the Public Utilities Regulatory Agency (PURA). See General Statutes § 16-244z (a) (2).

Pursuant to the terms of the request, "bids that [did] not include . . . proof of site control" would "not be considered." Section 4.4 of the request provides, as a prerequisite to eligibility, that a bidder must submit a "Bid Certification Form, including the affidavit from the owner of the project site and the applicable documentation demonstrating that the Bidder has control

of the generation site, or an unconditional right, granted by the property owner, to acquire such control . . . ." Section 2.4.1 further specifies what is required for "Proof of Site Control," stating in relevant part: "The Bidder must demonstrate that it has control of the generation site, or an unconditional right, granted by the property owner, to acquire such control. . . . In order to be considered to have site control for generation, the Bidder must provide copies of executed documents between the Bidder and [the] property owner showing one of the following: (a) that the Bidder owns the site or has a lease or easement with respect to the site on which the [facility] will be located . . . or (b) that the Bidder has an unconditional option agreement to purchase or lease the site . . . ."

The plaintiff and the company each submitted bids in response to the request. The company proposed a 2.8 megawatt fuel cell facility on land owned by the city of Derby (city) and located at 49 Coon Hollow Road (property). Its bid included the affidavit of Richard Dziekan, the mayor of the city, in which he attested that the company had "control of the generation site, or an unconditional right . . . to acquire such control."[1] That bid also included a copy of an option to lease agreement between the city and FuelCell regarding the property (option agreement), as well as an assignment of that option from FuelCell to the company (assignment).[2] The company's bid ultimately was selected for a project in United Illuminating territory.

The plaintiff thereafter commenced the present action against the defendants. The operative complaint is dated October 22, 2020, and contains two counts.[3] In count one, the plaintiff sought a declaratory ruling that the option agreement "does not provide the defendants with any legally enforceable rights" due to the city's alleged failure to comply with the requirements of the city charter and General Statutes § 7-163e. In count two, the plaintiff alleged that the defendants had submitted "a false bid certification" in violation of CUTPA as a result of the city's alleged failure to comply with the requirements of the city charter and § 7-163e "prior to executing" the option agreement.

On December 10, 2020, the defendants filed a motion to dismiss the action, alleging, inter alia, that the plaintiff lacked standing.[4] That motion was accompanied by Wolak's affidavit and copies of the request, the company's bid, the option agreement, and the assignment. On December 21, 2020, the plaintiff filed an objection to the motion to dismiss, but did not submit counteraffidavits or any other evidence.

On February 18, 2021, the court ordered "all briefing, documentation and affidavits" related to the motion to dismiss to be filed by March 19, 2021. In accordance with that order, both parties filed supplemental briefs on March 19, 2021. At that time, the plaintiff offered

the affidavit of its attorney, Thomas Melone, who averred that the plaintiff had provided notice of the action to the city. The defendants also submitted additional documentation.[5] In its "further objection" to the motion to dismiss, the plaintiff stated in relevant part: "The foundation of the plaintiff's challenge rests on the nonbinding option [agreement] executed between [the defendants] and the [city]. . . . The [city] failed to engage in any competitive process for its disposition of a real property interest, violating its city charter and [§] 7-163e."

By memorandum of decision dated April 30, 2021, the court granted the motion to dismiss. The court first concluded that the plaintiff's request for a declaratory ruling was not ripe for adjudication, as "PURA [had] not yet approved the [company's] bid . . . ." The court then concluded that the plaintiff lacked standing to bring its CUTPA claim against the defendants, as its alleged injuries "are remote and indirect." Accordingly, the court rendered a judgment of dismissal, and this appeal followed.

On appeal, the plaintiff claims that the court improperly concluded that it lacked standing to maintain the CUTPA action alleged in count two of its complaint.[6] We do not agree.

"The issue of standing implicates a court's subject matter jurisdiction and is subject to plenary review." *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 137, 161 A.3d 1227 (2017). "To establish standing to raise an issue for adjudication, a complainant must make a colorable claim of direct injury." *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 178, 740 A.2d 813 (1999). "The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . . [I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [When], for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." (Citations omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001). As our Supreme Court has explained, "notwithstanding the broad language and remedial purpose of CUTPA, we have applied traditional common-law principles of remoteness . . . to determine whether a party has standing to bring an action under CUTPA." (Footnote omitted.) *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 88, 793 A.2d 1048 (2002).

Connecticut courts "employ a three part policy analysis . . . [in applying] the general principle that plain-

tiffs with indirect injuries lack standing to sue. . . . First, the more indirect an injury is, the more difficult it becomes to determine the amount of [the] plaintiff's damages attributable to the wrongdoing as opposed to other, independent factors. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries. Third, struggling with the first two problems is unnecessary [when] there are directly injured parties who can remedy the harm without these attendant problems." (Internal quotation marks omitted.) *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 469–70, 28 A.3d 958 (2011).

It is undisputed that the company, as part of its bid, submitted both the affidavit of Mayor Dziekan, in which he attested that the company had "control of the generation site, or an unconditional right . . . to acquire such control," and a copy of the option agreement between the city and FuelCell, which option was assigned to the company. Those materials demonstrate that the company's bid comported with the requirement, set forth in §§ 2.4.1 and 4.4 of the request, that a bidder submit proof "that it has control of the generation site, or an unconditional right, granted by the property owner, to acquire such control."

The plaintiff's quarrel is not with the adequacy of the company's bid, but rather its legitimacy. In its complaint, the plaintiff alleged that the city's failure to comply with the "bid process" requirements of § 22 of the city charter and § 7-163e rendered the option agreement "unlawful," "without legal effect," and "void and illusory." The plaintiff further alleged that, as a result of the city's failure to comply with those requirements, "the [option agreement] does not provide the defendants with the unconditional right required by the [request] requirements." For that reason, the plaintiff alleged that the defendants had submitted "a false bid certification" in violation of CUTPA, which allegedly caused the plaintiff to suffer "an ascertainable loss of money because [it] will lose the revenue from the [shared clean energy facility program] that it would have received but for [the] defendants' submission of a false bid certification."

In its memorandum of decision, the trial court noted that, if the option agreement was unlawful and without legal effect as the plaintiff alleged, and the defendants did not have control of the site, the defendants "will be unable to fulfil their obligations under the contract. Presumably, the project would then be the subject of another [request for production], in which the plaintiff most strenuously asserts it will prevail. The direct recipient of any injury resulting from false certification would be [United Illuminating], the beneficiary of the

project. [United Illuminating] would presumably have at least one cause of action against the defendants. Additionally, the real party with purported unclean hands is [the city], which is claimed to have ignored its own city charter in order to furnish the option to lease to the defendants. The plaintiff has not brought an action against [the city], nor does it appear that the plaintiff has standing to maintain such an action. The plaintiff's claims are remote and indirect. If there is a potential victim of the defendants' alleged duplicity, it is [United Illuminating], not the plaintiff. The plaintiff lacks standing to bring the CUTPA claim."

We concur with that reasoning. If the defendants knowingly submitted a false bid, as the plaintiff alleges, the utility company that was a party to the contract for the shared clean energy facility would be a directly injured party and would be best suited to seek a remedy for the harm. Moreover, although the plaintiff on appeal claims that it was "100 percent certai[n]" to receive the shared clean energy facility contract in question if the defendants lacked the necessary site control, that contention is not alleged in the operative complaint and is undermined by the plain language of the request. On its first page, the request states: "EVERSOURCE AND [THE UNITED ILLUMINATING COMPANY] RESERVE THE RIGHT TO REJECT ANY OR ALL OFFERS OR PROPOSALS." Section 1.8 of the request further provides in relevant part that "[t]he [utility] [c]ompanies will evaluate all conforming Bids . . . however, the [utility] [c]ompanies make no commitment to any Bidder that it will accept any Bid(s)." Section 3.1.3 further confirms that the utility companies retain discretion in awarding a shared clean energy facility contract, stating: "Bids that are not selected as winning Bids may remain active on 'standby.' If one or more Bidders who were selected . . . do not execute the [s]tandard [a]greement, the next lower cost Bid *may* be offered an award." (Emphasis added.) See *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 610–11, 577 A.2d 709 (1990) (observing that use of word "shall" in contract signifies mandatory directive while use of word "may" generally "imports permissive conduct and the use of discretion" and "is an indication that the parties expressly intended something other than [a] mandatory" obligation); 17A C.J.S. Contracts § 428 (2022) ("[i]n the construction of contracts, the word 'may' ordinarily is regarded as permissive, rather than mandatory"). Because the utility companies, by the plain terms of the request, retained discretion in awarding shared clean energy facility contracts and reserved the right to reject any or all offers, the plaintiff's purported injuries are purely speculative. See, e.g., *State* v. *Dixon*, 114 Conn. App. 1, 9, 967 A.2d 1242 ("aggrievement or standing to appeal requires something more than conjecture or speculation of injury"), cert. denied, 292 Conn. 910, 973 A.2d 108 (2009); *Goldfisher* v. *Connecti-*

*cut Siting Council*, 95 Conn. App. 193, 198, 895 A.2d 286 (2006) ("mere speculation that harm may ensue is not an adequate basis for finding aggrievement").

We, therefore, agree with the trial court's determination that the plaintiff lacked standing to maintain its CUTPA action against the defendants. For that reason, the court properly granted the motion to dismiss.

The judgment is affirmed.

[1] A copy of the company's bid was submitted as an exhibit to Wolak's affidavit in support of the defendants' motion to dismiss.

[2] The company is a subsidiary of FuelCell.

[3] This action was commenced by service of process on November 2, 2020.

[4] Because the issue of the plaintiff's standing implicates the subject matter jurisdiction of the court; see *Rodriguez* v. *Kaiaffa, LLC*, 337 Conn. 248, 274, 253 A.3d 13 (2020); "all other action in the case must come to a halt until such a determination is made." (Internal quotation marks omitted.) *Igersheim* v. *Bezrutczyk*, 197 Conn. App. 412, 420, 231 A.3d 1276 (2020). For that reason, the plaintiff's subsequent filing of an amended complaint on December 21, 2020, was improper. As this court has noted, "our Supreme Court has explicitly held that the court cannot consider any amended pleading before ruling on the motion to dismiss. See *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996) (inappropriate for court to consider amended third-party complaint rather than initial complaint, when acting on state's motion to dismiss for lack of subject matter jurisdiction); *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) ('[b]y considering the motion to amend prior to ruling on the challenge to the court's subject matter jurisdiction, the court acted inconsistently with the rule that, as soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made')." *Igersheim* v. *Bezrutczyk*, supra, 420.

[5] The defendants appended six documents to their March 19, 2021 filing. Exhibit A is a copy of the January 22, 2021 notice from PURA informing the parties that it had denied the plaintiff's challenges to the bid submitted by the company because they "do not rise to the level of a programmatic deficiency . . . ." Exhibits B and C are notices from PURA regarding its "Review of Statewide Shared Clean Energy Facility Program Requirements," while Exhibit D is the "Shared Clean Energy Facility ('SCEF') Tariff Terms Agreement Subscriber Organization" dated January 22, 2021. Exhibit E is a twenty-two page document titled "The United Illuminating Company Shared Clean Energy Facility Rider Subscriber Organization Terms and Conditions," and Exhibit F is a research report from the Office of Legislative Research dated October 1, 2018, on energy procurements.

[6] In this appeal, the plaintiff does not contest the propriety of the court's determination that the request for a declaratory ruling set forth in count one was not ripe for adjudication.